UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN H. HALL, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF LABOR, *et al.*, <br><br> Defendants. | Civil Action No. 16-846 (BAH) <br><br> Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

*Pro se* plaintiff, Steven H. Hall, a former employee of the Department of Homeland Security ("DHS"), seeks judicial review of a decision, originally made by the Department of Labor's ("DOL") Office of Workers' Compensation ("OWCP"), rescinding the plaintiff's benefits under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq*. Pl.'s First Amended Compl. ("FAC") at 1–3, ECF No. 14. The plaintiff initially obtained compensatory benefits for a claim that his four weeks of work as an administrative assistant at St. Elizabeth's construction site in Southeast, Washington, D.C., caused him to develop a respiratory illness. *Id.* ¶¶ 1–2. Having pursued this claim unsuccessfully through no less than six rounds of review by both OWCP and DOL's Employee's Compensation Appeals Board ("ECAB"), *see id.* ¶¶ 2–5, the plaintiff now asks this Court to review the administrative decision on the single claim that remains from his First Amended Complaint, Pl.'s Mem. Supp. Mot. Not to Dismiss ("Pl.'s Mem.") at 3, 14–16, ECF No. 18. He contends "OWCP and [ECAB] abused [their] authority and were not in compliance with internal procedures [and] FECA," and, as a result, the plaintiff is entitled to damages for "retaliation, obstruction of justice, perjury, and prohibited personnel practices." *Id.* at 16. DOL now moves, pursuant to Federal Rule of Civil

1

Procedure 12(b)(1), to dismiss the plaintiff's remaining claim, arguing that FECA precludes judicial review, under 5 U.S.C. § 8128(b), and the plaintiff's "attempts to circumvent FECA's judicial preclusion" are unavailing. *See* Defs.' Mot. Dismiss at 1, ECF No. 15; Defs.' Reply Mot. Dismiss ("Defs.' Reply") at 1–2, ECF No. 19. For the reasons set forth below, DOL's Motion to Dismiss is **GRANTED**.[1]

## I. BACKGROUND

The plaintiff's claims and underlying allegations have evolved over four iterations of his filings labeled as "complaints," *see generally* Compl., ECF No. 1; Amended Compl., ECF No. 6; Amendment to Compl., ECF No. 12; FAC, and thus present a moving target of factual assertions that are difficult to parse or understand in places, especially in conjunction with the FAC's 224-page attachment with fifty separate exhibits, *see generally* FAC, Attach. 1 ("FAC Attach."), Exs. A–AX, ECF No. 14-1. Nonetheless, to the extent intelligible, the plaintiff's allegations are assumed to be true for the purpose of resolving the pending motion. Summarized below are the factual allegations made in the FAC, followed by the relevant procedural history.

### A. Factual Background

On August 1, 2012, the plaintiff, who has "diagnosed and documented preexisting respiratory issues, anxiety and depression, and sleep apnea," was assigned to work as an administrative assistant at the St. Elizabeth's Construction site. FAC at 2–3. According to the plaintiff, his employment at St. Elizabeth's required him "to rinse and wipe down golf carts and perform escorts throughout the [St. Elizabeth's] campus," which was "hot and dusty." *Id.* ¶¶ 1–

---

[1] The plaintiff has filed a "Motion Not to Dismiss," ECF No. 18, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 52(a), 56(e), as well as 5 U.S.C §§ 8103, 8128, and 20 C.F.R. §§ 501.2–3, which motion is construed as an opposition to DOL's Motion to Dismiss, and otherwise DENIED. Likewise, the plaintiff's outstanding Motion for Case Status, ECF No. 16, which he filed two months after DOL submitted its third Motion to Dismiss, is DENIED AS MOOT.

2

2. In early August 2012, he "became ill on DHS premises," and his existing "respiratory issues" were "exacerbated." *Id.* ¶ 1. Over the next almost six months, "[f]rom August 29, 2012 to February 18, 2013, [he] recuperated from his respiratory issues at home," only returning to St. Elizabeth's for a brief one week period, from February 19 to 26, 2013, before he "became ill" again. *Id.* ¶ 1–2. The plaintiff did not return to work and was removed from the position in November 2013. *Id.* ¶ 2.

The plaintiff first filed a claim under FECA to obtain compensation benefits for his respiratory issues on November 20, 2012. Pl.'s Mem. at 4; FAC ¶ 1. The plaintiff's supervisor controverted the claim, "indicating that there was no difference in the outside and inside air quality" at St. Elizabeth's such that the conditions on the premises would have aggravated the plaintiff's preexisting respiratory issues. FAC ¶ 1. The supervisor's comments appear to be based on an Air Quality Test ("AQT") performed on the premises, beginning in September 2012. *Id.* In September 2012, the plaintiff began providing OWCP with "medical documentation and recommendations from attending physicians to remove Plaintiff from a dusty working environment." *Id.* DHS offered the plaintiff accommodations, including a dust mask and air purifier, which the plaintiff initially rejected and then said did not work upon trying them in February 2013. *Id.* ¶ 2.

On January 9, 2013, OWCP accepted the plaintiff's claim for compensation benefits based on his respiratory issues, authorizing the plaintiff to receive almost $30,000 in workers' compensation for the period of September 23, 2012, through March 29, 2013. *Id.* ¶ 2. The plaintiff was assigned to a Field Nurse who provided reports to OWCP Claims Examiners and Consultant Nurses about the plaintiff's condition from February 2013 through June 2013. *Id.* On May 8, 2013, OWCP informed the plaintiff that an Air Quality Sample Report ("AQSR")

3

indicated "no difference in the air quality inside or outside Plaintiff['s] workplace" and that the plaintiff had "30 days to submit documentation in support of his respiratory claim." *Id.* After the plaintiff "provided OWCP medical documentation and a recommendation to remove Plaintiff from [St. Elizabeth's]," OWCP rescinded the plaintiff's benefits on June 10, 2013. *Id.*

The plaintiff unsuccessfully attempted to reverse the June 10, 2013, decision at least six times through the administrative review process afforded under FECA. Specifically, the plaintiff asked OWCP to reconsider the June 10, 2013 decision on June 24, 2013, and October 8, 2014. *Id.* ¶¶ 2, 4; *see also S.H. and Dep't Homeland Sec.*, No. 15-0539, 2015 WL 6074170, at *4 (E.C.A.B. Sept. 21, 2015) (providing dates for claims). Both times OWCP denied the requests as "not sufficient to warrant" reopening the case because the evidence submitted was "cumulative." *See* FAC ¶¶ 2, 4; Pl.'s Mem. at 9; *see also* Defs.' Mot. Dismiss, Ex. 1, Decl. Julia Tritz, Deputy Director for Federal Employees' Compensation, OWCP ("Tritz Decl.") ¶¶ 8, 11, ECF No. 15-3.

The plaintiff appealed both of the reconsideration denial decisions to ECAB, on January 13, 2014, and January 20, 2015, respectively, and, in both cases, ECAB found that OWCP properly declined to re-open the case. *See S.H.*, 2015 WL 6074170, at *1, 4; FAC ¶¶ 3, 5; Pl.'s Mem at 8–9. ECAB made non-merits decisions in both cases because "the 180 days allotted by 20 C.F.R. [§] 501.3 to appeal OWCP's June 10, 2013 decision had elapsed." FAC ¶¶ 3, 5; Pl.'s Mem. at 8; *see also S.H.*, 2015 WL 6074170, at *1. With respect to both decisions, the plaintiff sought at least one additional and unsuccessful review, through reconsideration in one case and an appeal, for which ECAB concluded it had no jurisdiction, in the other. *See* FAC ¶¶ 3, 5; *see also* Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") at 4, ECF No. 15-1 (summarizing claim history).

**B. Procedural History**

The plaintiff brought the instant lawsuit against DOL in May 2016, initially by "mistakably invok[ing] a variety of statu[t]es in five separate claims." FAC at 1.[2] The plaintiff sought a total of $295,542.00 in damages for loss of salary, emotional abuse and mental stress, and workers' compensation benefits. Compl. ¶¶ 6–14. As noted, the plaintiff confusingly filed a total of four documents captioned as "complaints," which prompted DOL to file three motions to dismiss in this litigation. After the third "complaint," the Court ordered the plaintiff to clarify his claims and provide notice of whether he was "seek[ing] to amend his complaint or . . . instead [file] his opposition to Defendants' motion to dismiss." Min. Order (dated Nov. 23, 2016).[3] In response to the Court's order, the plaintiff filed the FAC, which essentially sets out the same scattered claims against DOL as in the original complaint. At the same time, the plaintiff clarifies in his memorandum that he is asserting a single FECA claim against DOL for his denial of benefits for his respiratory illness. Pl.'s Mem. at 14–16 (asserting a "FECA claim" and clarifying plaintiff does "not seek damages under 5 U.S.C. [§] 8151 . . . [or] under the FTCA," and he "is not stating a claim under the Americans with Disabilities Act [or] . . . the Rehabilitation Act").

---

[2] The plaintiff's original complaint named as defendants three employees of DOL, without stating whether the individuals were being sued in their individual or official capacities. Compl. ¶¶ 1–3 (naming Angella Winn of OWCP, Kellianne Conaway of OWCP, and Thomas Shepherd of ECAB). The FAC drops the three individuals as defendants, while naming then-Secretary of DOL "Thomas Perez *et al.*," without referencing Mr. Perez in the body of the complaint, and describing the "Defendants" as only "DOL." FAC at 1. Neither complaint seeks a separate remedy from any individual mentioned. *See generally* FAC; Compl. ¶¶ 11–14. Thus, to the extent any DOL employee is sued, that employee is sued in an official capacity. *See e.g., Daskalea v. D.C.*, 227 F.3d 433, 448 (D.C. Cir. 2000) (finding individual was not sued in her individual capacity where "[n]either the complaint nor any other pleading filed by plaintiff indicates whether [the individual] was charged in her official or her individual capacity"). In any event, the FAC appears to be against the entity of DOL. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *see also* Defs.' Mem. at 1 n.1 (arguing plaintiff's lawsuit is "against the Department of Labor only").

[3] This case was reassigned to the undersigned on October 24, 2017.

## II. LEGAL STANDARD

DOL seeks to dismiss the plaintiff's remaining claim, pursuant to Federal Rule of Civil Procedure 12(b)(1).[4] To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claims asserted. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute,'" *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006); FED. R. CIV. P. 12(h)(3) (requiring dismissal of action "at any time" the court determines it lacks subject matter jurisdiction).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972

---

[4] DOL filed the Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) before the plaintiff clarified the one remaining FECA claim. *See* Defs.' Mot. Dismiss at 1. In light of that clarification, DOL now only argues for dismissal due to lack of subject matter jurisdiction. *See* Defs.' Reply at 1. In any event, when a defendant files a motion to dismiss under both Rules, the Rule 12(b)(1) grounds for dismissal are examined first "as subject matter jurisdiction presents a threshold question." *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 874 (D.C. Cir. 2014). Since this case is resolved under Rule 12(b)(1), Rule 12(b)(6) need not be considered.

(D.C. Cir. 2005)). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In resolving the motion to dismiss for lack of subject matter jurisdiction, the court may consider materials outside the pleadings. *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016); *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Herbert*, 974 F.2d at 196 ("[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

## III. DISCUSSION

While acknowledging that, as a general rule, "FECA precludes judicial review of OWCP and [ECAB]" decisions, the plaintiff relies on "an exception . . . for constitutional claims," Pl.'s Mem. at 12–13, contending that "[t]his Court has subject matter jurisdiction in this case due to factual inferences" demonstrating that OWCP and ECAB "abused [their] authority and were not in compliance with internal procedures, FECA, 5 U.S.C. [§] 8128, 20 C.F.R. [§§] 501.2 and 501.3" and engaged in "retaliation, obstruction of justice, perjury, and prohibited personnel practices," *id.* at 16. DOL counters that the plaintiff's attempts to circumvent the FECA's preclusion of judicial review are unavailing because, even if the plaintiff's allegations of "various legal and factual errors" by DOL are correct, they do not amount to constitutional violations that would trigger judicial review of a claims decision, noting that "the reconsideration and appeal process afforded to Plaintiff pursuant to FECA comfortably satisfies the

Constitution." Defs.' Reply at 2–3 (citing *Lepre v. U.S. Dep't of Labor*, 275 F. 3d 59, 74 (D.C. Cir. 2001)).[5] DOL is correct.

### A. The FECA Scheme

Under FECA, "[t]he United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . . ." 5 U.S.C. § 8102(a). The Secretary of Labor has the authority to "administer, and decide all questions arising under" FECA, which authority may be delegated "to any employee of [DOL]." 5 U.S.C. § 8145. The Secretary is also authorized to "prescribe rules and regulations necessary for the administration and enforcement" of FECA, including to "provide for an [ECAB] . . . with authority to hear and, subject to applicable law and the rules and regulations of the Secretary, make final decisions on appeals taken from determinations and awards with respect to claims of employees." *Id.* § 8149.

FECA regulations delineate the parties' responsibilities during the development of claims and provide procedures for administrative review. Once an employee has initiated a claim for a payment due to an injury allegedly sustained during the performance of a work-related duty, the employing agency is required to provide OWCP with specified forms, advise the claimant of rights related to receiving compensatory payments, and inform the claimant of any decision to controvert such a payment, along with the reason for doing so. 20 C.F.R. § 10.211. Furthermore, after OWCP accepts a claim, OWCP bears the burden of demonstrating that the benefits should be reduced or terminated. *Id.* § 10.503. An award for or against payment of

---

[5] The plaintiff's hyperbolic allegations that OWCP and ECAB "obstructed justice" and committed "perjury," *see, e.g.,* FAC at 1; Pl.'s Mem. at 11, 14, which allegations DOL characterizes as "unfounded," Defs.' Reply at 2, have no discernible factual basis. Beyond that, DOL correctly points out that, to the extent the plaintiff intends to allege criminal activity by DOL, the plaintiff cannot bring a private right of action against DOL for violations of criminal statutes, "even if those claims had been properly pled." *See Ellis v. CapitalSource Bank FBO Aeon Fin., LLC*, 924 F. Supp. 2d 282, 286 (D.D.C. 2013); *see also Ivey v. Nat'l Treasury Emps. Union*, No. 05-1147 (EGS), 2007 WL 915229, at *5 (D.D.C. Mar. 27, 2007).

8

compensation "may be reviewed at any time on the Director's own motion," and "[s]uch review may be made without regard to whether there is new evidence or information." *Id.* § 10.610.

Claimants may challenge a decision by OWCP through administrative review in three ways. First, the claimant may request a hearing in front of OWCP "within 30 days . . . of the date of the decision for which a hearing is sought," but "[t]he claimant must not have previously submitted a reconsideration request (whether or not it was granted) on the same decision." 5 U.S.C. § 8124; 20 C.F.R. § 10.616(a); *see also generally id.* §§ 10.615–22. Second, the individual may submit an application requesting reconsideration by OWCP. 5 U.S.C. § 8128; 20 C.F.R. § 10.606.[6] Third, the individual may file an appeal with ECAB, as "[ECAB] has jurisdiction to consider and decide appeals from final decisions of OWCP in any case arising under the FECA." 20 C.F.R. § 501.2(c). Review by ECAB is subject to certain limitations, including that (1) ECAB's "review of a case is limited to the evidence in the case record that was before OWCP at the time of its final decision," *id.* § 501.2(c)(1); (2) OWCP and ECAB "may not exercise simultaneous jurisdiction over the same issue in a case on appeal," *id.* § 501.2(c)(3); and (3) "[a]ny notice of appeal must be filed within 180 days from the date of issuance of a decision of the OWCP," *id.* § 501.3(e). A claimant may also challenge an ECAB decision by petitioning for reconsideration. *Id.* §§ 501.6–7.

Judicial review of determinations under FECA are precluded under 5 U.S.C. § 8128(b). Indeed, "[t]he action of the Secretary or her designee in allowing or denying a payment under this subchapter is . . . (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court

---

[6] The application must, *inter alia*, "[s]et forth arguments and contain evidence that either: (i) [s]hows that OWCP erroneously applied or interpreted a specific point of law; (ii) [a]dvances a relevant legal argument not previously considered by OWCP; or (iii) [c]onstitutes relevant and pertinent new evidence not previously considered by OWCP." 5 U.S.C. § 8128; 20 C.F.R. § 10.606; *see also generally id.* §§ 10.605–06.

9

by mandamus or otherwise." *Id.* The Supreme Court has recognized § 8128(b) as an example of "Congress intend[ing] to bar judicial review altogether," given the provision's "unambiguous and comprehensive" language. *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 779–80 & n.13 (1985); *see also Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 90–91 (1991).

The general finality of administrative adjudications set out in § 8128(b) "does not bar judicial review of constitutional claims." *Lepre*, 275 F.3d at 67–68 (D.C. Cir. 2001) (citing, *e.g.*, *Czerkies v. U.S. Dep't of Labor*, 73 F.3d 1435, 1442 (7th Cir. 1996) (en banc); *Brumley v. U.S. Dep't of Labor*, 28 F.3d 746, 747 (8th Cir. 1994) (per curiam); *Benton v. United States*, 960 F.2d 19, 22 (5th Cir. 1992) (per curiam)). In *Lepre*, the plaintiff "challenged the constitutionality of [ECAB's] reliance on the mailbox rule," along with DOL's "deficient post-suspension review procedures," as failing "to meet the requirements of due process." 275 F.3d at 63, 68. The D.C. Circuit first found that § 8128(b) did not preclude judicial review of a plaintiff's due process challenge to DOL's reliance on "the mailbox rule," which "presume[s] . . . that a notice mailed to an individual in the ordinary course of business was received by that individual." *Id.* at 62, 67–68 (internal quotation marks omitted). Noting that this due process challenge to the mailbox rule "focuse[d] on a structural component of the FECA system itself, and not simply on an individual decision on a benefits claim," the D.C. Circuit determined the challenge was "constitutional and systemic" such that judicial review was not barred. *Id.* at 67.

Notwithstanding this holding, the plaintiff's claim was dismissed for lack of subject matter jurisdiction, since "the availability of agency reconsideration and appeal provide sufficient avenues of redress and rectification to meet the requirements of due process." *Id.* at 71. The Circuit did not elaborate on the process available to the plaintiff, but rather emphasized that the plaintiff had received a suspension notice from OWCP, and "offer[red] no more than

10

bald assertions that the post-suspension proceedings were 'a sham' and that he did not have a fair opportunity to challenge OWCP's decision." *Id.* Due to the "absence of specificity," the Circuit concluded that "even assuming a mistaken denial of benefits," the plaintiff did not provide a basis to find that his due process rights were violated. *Id.*

The D.C. Circuit additionally considered, and rejected, a contention by Lepre "that the Secretary violated FECA's statutory mandate by failing to reschedule his medical examination after receipt of his" affidavit, which advised OWCP of the problems he was having with his claim. *Id.* Explaining that "review may be had only when the agency's error is patently a misconstruction of the Act, . . . or when the agency has disregarded a specific and unambiguous statutory directive, . . . or when the agency has violated some specific command of the statute," the Court concluded that "[g]arden-variety errors of law or fact are not enough." *Id.* at 74 (quoting *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir., 1988)). In Lepre's case, the Circuit found his challenge "amount[ed] to an alleged 'garden-variety' error by the Secretary, one in the nature of a factual dispute or a mixed question of law and fact, rather than claim of a statutory violation that is plain on its face." *Id.* Thus, "whatever discretion the Secretary may have to restore FECA benefits retroactively, following a new medical examination . . ., her refusal to do so for Lepre [did] not, on the grounds he assert[ed], constitute a violation of a clear statutory mandate, nor [did] it constitute a violation of Lepre's due process rights." *Id.* The claim was therefore dismissed for lack of subject matter jurisdiction. *Id.*

**B. Judicial Review of Plaintiff's FECA Claim is Precluded**

The plaintiff acknowledges that FECA precludes judicial review, *see* Pl.'s Mem. at 13, and fails to establish that any exception to this rule applies for at least three reasons.

11

First, the plaintiff in the instant matter has not alleged a "due process challenge focuse[d] on a structural component of the FECA system, itself," but instead "simply [focuses] on an individual decision on a benefits claim." *See Lepre*, 275 F.3d at 67–68. The remaining claim in this litigation appears to be a challenge to OWCP's determination about the effect of the air quality at St. Elizabeth's on the plaintiff's health, instead of a claim about a systemic process. *See* FAC at 1; Pl.'s Mem. at 3. Indeed, the plaintiff's FAC and memorandum both state upfront that "*Plaintiff seeks review of a decision*," and provide an immediate reference to the air quality assessments conducted at St. Elizabeth's. Pl.'s Mem. at 3 (emphasis in original); *see also* FAC at 1. Thus, having unsuccessfully and repeatedly sought administrative restoration of workers' compensation stemming from his month-long period of work at St. Elizabeth's, the plaintiff is seeking re-examination and re-evaluation of the AQT and AQSR findings, as well as medical records that the plaintiff submitted in support of his benefits. Such judicial review is squarely barred, under 5 U.S.C. § 8128(b)(2), removing this Court's subject matter jurisdiction, *see Lindahl*, 470 U.S. at 779–80 & n.13.

Second, the record demonstrates that the plaintiff received ample, not just adequate, process. *See Czerkies*, 73 F.3d at 1439 ("[C]ourts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms.") (alteration in original) (quoting *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994)); *see also Scott v. Solis*, No. CV 12-2055 (EGS), 2014 WL 984387, at *2 (D.D.C. Mar. 14, 2014) (dismissing plaintiff's attempt to obtain judicial review of FECA determination for lack of subject matter jurisdiction based on the evidence of adequate process in "the administrative record supplied by both parties"). Here, to the extent the plaintiff had a legitimate property interest in, and was

deprived of, benefits, the record demonstrates that the plaintiff received "adequate notice and an opportunity to respond" under the FECA statutory scheme. *See Lepre*, 275 F.3d at 69.

Initially, the plaintiff received notice and an opportunity to submit additional evidence in advance of the June 10, 2013 letter rescinding his benefits. *See* FAC ¶ 2; *see also* Tritz Decl. ¶¶ 6–7. He also was afforded multiple opportunities to have his claim reviewed, including through two rounds of reconsideration, two appeals to ECAB, and, apparently, two attempts at having ECAB review its own decisions. *See* Tritz Decl. ¶¶ 8–11; *see also S.H.*, 2015 WL 6074170, at *1–5 (providing procedural history of claim); FAC Attach., Ex. AR, Order Dismissing Appeal (dated June 21, 2016) at 1.

Even if OWCP improperly denied the plaintiff's benefits in June, 2013, the plaintiff would not have a claim for due process violations because he was afforded more than adequate process. *See Bober v. Chao*, 81 F. App'x 740 (D.C. Cir. 2003) (finding process given to plaintiff "clearly satisfies the Constitution" where "[h]e was given ample opportunity to present his objections in administrative appeals, and in fact he did so," and "[t]he Secretary's rejection of appellant's arguments does not mean that his constitutional rights have been violated"); *Gallucci v. Chao*, 374 F. Supp. 2d 121, 126 (D.D.C. 2005) ("Unlawfully depriving a claimant of benefits does not violate due process because FECA provides for meaningful post-deprivation remedies."), *aff'd*, No. 05-5280, 2006 WL 3018055 (D.C. Cir. Mar. 2, 2006).

Finally, the factual inferences the plaintiff urges as the alleged basis for his "due process" challenge are entirely unsupported, even when the FAC is construed liberally. FAC ¶¶ 2–6; Pl.'s Mem. at 5–12. For example, the plaintiff suggests that Consultant Nurses directed Field Nurses "to destroy" records and "collaborated" with Claims Examiners to deny the plaintiff benefits, *see, e.g.,* FAC ¶ 2; Pl.'s Mem. at 4, 15, but he cites as support for this accusation Field Nurse

reports that simply do not pertain to any lack of notice or suggestion that his evidence was not actually considered, *see* FAC ¶ 2 (citing FAC Attach., Ex. H, Field Nurse Closure Reports at 7, 16).

Next, the plaintiff's contention that OWCP improperly relied on a certain AQSR, *see e.g.,* Pl.'s Mem. at 14, raises no constitutional questions because the plaintiff had an opportunity to submit evidence in response, and OWCP was well within its discretion to interpret the assessment provided. *See* 20 C.F.R. § 10.610.

With respect to the plaintiff's broad complaint about "no oral argument" before ECAB, Pl.'s Mem. at 14, the plaintiff did not receive oral argument for his appeals to ECAB because he cancelled his request for an oral argument after submitting the request, *see* FAC ¶ 5; FAC Attach., Ex. AH, Cancel Oral Argument Request (dated Feb. 14, 2015) at 2 (cancelling Jan. 20, 2015 request), and, further, ECAB has discretion to deny such requests, *see* 20 C.F.R. § 10.616(a); FAC ¶ 5; FAC Attach., Ex. AL, Order Denying Request for Oral Argument, at 1–2 (July 24, 2015). To the extent the plaintiff challenges "no . . . oral arguments" held by OWCP, the record makes clear that the plaintiff's filing for reconsideration of the June 10, 2013 OWCP decision before requesting oral argument operated to preclude oral argument. *See* FAC ¶ 2; *see also* 20 C.F.R. § 10.616(a) (stating claimant cannot have hearing on OWCP decision if she "previously submitted a reconsideration request . . . on the same decision").[7]

---

[7] In his efforts to show a due process challenge, the plaintiff appears to suggest a "secret meeting" occurred to deny him an opportunity to be heard before his denial of benefits, Pl.'s Mem. at 7, 11, but nothing in the record supports such a suggestion. To the contrary, the record provides an explanation for the meeting held in the plaintiff's absence and indicates the meeting was entirely appropriate. *See* FAC Attach., Ex. S, Email from Gary D Myers (Program Manager and Policy Advisor, DHS) to plaintiff (dated Jan. 28, 2014) at 1 ("You suggest that there was a 'private/secret meeting' that you were prohibited from attending, but this was not the case—it was a meeting for me to express my concerns with the District Director about some of her employees who did not appear to be following internal procedures.").

Further, the plaintiff's complaint that OWCP "did not provide," and "did not require DHS to complete" various forms required by internal guidelines, and in violation of his due process rights, *see* Pl.'s Mem. 14, is not a "structural" and "systemic" challenge that would overcome FECA's bar to judicial review, *Lepre*, 275 F.3d at 68 (internal quotation marks and citation omitted). Even if true, this is precisely the type of procedural shortcoming that may be addressed through administrative review. *See id.* at 74 ("[A]n alleged 'garden-variety' error by the Secretary, . . . [which is] no more than a challenge to the assessment of [the plaintiff's] evidence . . . does not, on the grounds he asserts, . . . constitute a violation of [the plaintiff's] due process rights."); *see also Raditch v. United States*, 929 F.2d 478, 480 (9th Cir. 1991) ("Because the deprivation of [the plaintiff's] benefits resulted from the unauthorized act of a government official in violation of the OWCP procedures, and adequate postdeprivation remedies for the violation exist, [he] received all the process that was due.").

Moreover, the plaintiff's attempt to elevate any procedural shortcomings to statutory violations of FECA falls short of curing the jurisdictional defect in this case. He argues, for instance, that OWCP and ECAB violated "FECA at 5 U.S.C. [§] 8103," which the plaintiff contends "authorizes medical services for treatment of any condition." *See, e.g.*, Pl.'s Mem. at 5, 8, 14. The cited statute simply does not impose the broad obligation to provide medical treatment that the plaintiff asserts. *See* 5 U.S.C. § 8103 (requiring United States to furnish medical services, "which the Secretary of Labor considers likely to cure, give relief, reduce the degree or the period of disability, or aid in lessening the amount of the monthly compensation"). Thus, even if the claim that "the Secretary disregarded the plain letter of the law" were cognizable, *Lepre*, 275 F.3d at 73, the plaintiff has provided no indication of any such clear violation of the

statute, *see, e.g.*, FAC Attach., Ex. AA, ECAB Decision and Order Appeal (dated July 3, 2014) at 2 (providing, merely, plaintiff's unsupported reading of 5 U.S.C. § 8103).

For these reasons, the plaintiff has failed to allege any constitutional claim and, thus, the Court lacks subject matter jurisdiction to hear this case.

## IV. CONCLUSION

For the foregoing reasons, DOL's Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) is **GRANTED**, and this case is dismissed.

A separate Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: January 30, 2018

_____

BERYL A. HOWELL
Chief Judge